UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN A. FERNICOLA,** *et al.* <br><br> **Plaintiffs,** <br><br> v. <br><br> **BOROUGH OF POINT PLEASANT BEACH,** *et al.*, <br><br> **Defendants.** | Case No. 22–cv–06971–ESK–SAK <br><br><br> OPINION |

**KIEL, U.S.D.J.**

 **THIS MATTER** is before the Court on defendants' motion to dismiss (Motion) (ECF Nos. 29, 29–1 (Mov. Br.)) plaintiffs' third amended complaint (Complaint) (ECF No. 27 (Compl.)).  Plaintiffs filed an opposition to the Motion (ECF No. 38 (Opp'n Br.), in response to which defendants filed a reply (ECF No. 39 (Reply Br.)).  For the following reasons, the Motion is **GRANTED in part** and **RESERVED in part**.

 **I.  BACKGROUND**

 I am confident the parties are familiar with the factual allegations and procedural history of this case, so I will not provide a detailed background.  I incorporate by reference the factual overview and procedural history Judge Rukhsanah L. Singh[1] provided in her opinion and order dated November 20, 2023 (ECF No. 26), which granted plaintiff leave to file the Complaint.

 This case involves allegations of "bad faith actions and the corrupt use of municipal resources" by defendants Mayor Paul Kanitra, in his individual

---

[1] Prior to transfer of this case on March 28, 2024 to Judge Sharon A. King and me in Camden (ECF No. 40), it was assigned to Judge Singh and Judge Georgette Castner in Trenton (*see* entry after ECF No. 2).

capacity, and the Borough of Point Pleasant to "deprive [p]laintiffs of their personal liberty and their lawful right to use and enjoy their private property." (Compl. ¶1.) Plaintiffs John A. Fernicola, John Fernicola, and Theresa M. Perone own the underlying property at issue upon which the Amethyst Beach Motel operates. (*Id.* ¶¶1, 2.) The Motel is managed and operated by plaintiffs Amethyst International Inc. and World Trade Associates, Inc. (*Id.* ¶3.) John A. Fernicola is the president and owner of the corporate plaintiffs. (*Id.*)

This case was initially filed in the Superior Court of New Jersey (State Court). (ECF No. 1 ¶1.) After plaintiffs filed a second amended complaint, adding civil rights claims pursuant to 42 U.S.C. §1983 and the New Jersey Constitution, defendants removed this action to this court pursuant to federal question jurisdiction. (*Id.* ¶¶21–30.) Plaintiffs argue that defendants "repeatedly targeted the … [m]otel … for harassment to push [p]laintiffs to close the [m]otel or sell the [p]roperty to the Borough without just compensation." (Compl. ¶24.) For example, in April 2020, Borough officials and law enforcement allegedly failed to provide plaintiffs assistance with squatters who were causing damage to the Motel. (*Id.* ¶32.) Although unclear whether referring to John A. Fernicola or John Fernicola, the Complaint also notes that around this time, "insupportable summonses and citations" were issued to "Mr. Fernicola … for disorderly person charges." (*Id.*) The Mayor also allegedly "read and disseminated defamatory messages to third-parties" and issued a press release about "Mr. Fernicola in an effort to further destroy his reputation in the community." (*Id.* ¶¶33–36.) In 2021, defendants passed Ordinance 2021–12, which authorized the condemnation of the property on which the Motel sat to create parking. (*Id.* ¶¶78, 79.)

Although the Ordinance was repealed in 2022 and the property was never condemned, plaintiffs argue that the Ordinance was introduced "as part of

[defendants'] effort to gain leverage in its negotiations … to acquire the [p]roperty." (*Id.* ¶ 81.)

The Complaint raises the following claims: (1) count one, prerogative writ [2]; (2) count two, defamation; (3) count three, violation of the equal protection clause; (4) count four, violation of substantive due process; (5) count five, violation of the New Jersey Constitution; (6) count six, conspiracy to deprive plaintiffs of their civil rights; (7) count seven, failure to turn square corners; (8) count eight, malicious use of process; and (9) count nine, tortious interference. (Compl. pp. 26–40.)

## II. MOTION

On December 6, 2023, defendants filed the Motion. (Mov. Br.) Defendants advance arguments pursuant to Federal Rules of Civil Procedure (Rules) 8(a), 12(b)(1), and 12(b)(6). (*Id.* pp. 32, 33.) Defendants also raise immunity and statute of limitation defenses and argue that certain claims are impermissibly duplicative. (*Id.*)

After plaintiffs filed an opposition to the Motion on November 22, 2023 (Opp'n Br.), Judge Castner held a status conference with the parties on December 19, 2023. (*See* Status Conference Tr.) At the status conference, defendants explained that they do not seek dismissal of counts eight, nine, and part of count two. (*Id.* pp. 7, 8; *see* Mov. Br. pp. 69–73.) In further support of their position, defendants filed a reply on January 26, 2024. (Reply Br.)

I held a hearing on the Motion on December 20, 2024, at which plaintiff sought leave to file a fourth amended complaint. (*See* ECF Nos. 50, 53

---

[2] Count one was dismissed prior to removal. (Mov. Br. p. 21.) The State Court Judge found that because the "[O]rdinance has since been replaced … the very subject matter of count one … has been eliminated." (*Id.*) Plaintiffs, however, still include count one in the Complaint because they "reserve" it for appeal. (Compl. ¶ 107; see ECF No. 37 (Status Conference Tr.) pp. 6, 7.)

3

(Hearing Tr.) pp. 8, 12, 13.) I advised counsel that while leave will be granted, I would provide the parties' guidance for the filing of an amended complaint in a written decision. (*Id.* pp. 12–14.) At the parties' request, I, however, administratively terminated this case and stayed the issuance of the written decision on the Motion to give the parties an opportunity to resolve their disputes through mediation. (ECF No. 49.) On April 15, 2025, the parties advised that mediation failed. (ECF No. 51.) Accordingly, I reinstated this case (ECF No. 52), and will now resolve the Motion (*see* ECF No. 55).

### III. LEGAL STANDARD

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Courts shall accept the plaintiff's factual assertions, which "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 342 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(1) may attack subject matter jurisdiction facially or factually. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack challenges the allegations supporting the

assertion of jurisdiction, which permits a court to weigh evidence outside of the pleadings and places the burden of proof on the plaintiff to demonstrate that jurisdiction exists. *Id.* A facial attack does not dispute the facts as alleged and essentially applies the Rule 12(b)(6) standard. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 221 (D.N.J. 2022). Dismissal for lack of ripeness, mootness, or standing is properly brought under Rule 12(b)(1) because ripeness is a jurisdictional issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### IV. DISCUSSION

#### A. Counts Three to Six

##### 1. Justiciability

Article III of the United States Constitution limits courts to only hear claims where a live case or controversy exists. *See Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994). Ripeness is an element of justiciability under Article III, the function of which "is to determine whether a party has brought an action prematurely ... and counsel[] abstention until such time as a dispute is sufficiently concrete." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). "Various concerns underpin [the ripeness doctrine], including ... whether a party is genuinely aggrieved." *Plains All American Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017). A ripeness challenge requires a court to examine: (1) "the fitness of the issues for judicial decision"; and (2) "the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967).

Mootness is another approach to justiciability, which asks "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007). "A case may become moot if (1) 'it can be said with

assurance that there is no reasonable expectation ...' that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Rogin v. Bensalem Twp.*, 616 F.2d 680, 684 (3d Cir. 1980) (alteration in original) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "If a claim is based on a statute or ordinance that is amended after the litigation has begun, the amendment may or may not moot the claim, depending on the impact of the amendment." *Nextel Partners Inc. v. Kingston Twp.*, 286 F.3d 687, 693 (3d Cir. 2002). In other words, while ripeness considers whether the future will be a better time for judicial review, mootness asks whether the time for judicial review has passed because the parties no longer possess a legally cognizable interest in the outcome.

Defendants argue that this court "lacks subject matter jurisdiction over counts three to five because the face of the Complaint and the facts of this matter squarely reveal that … [p]laintiff[s] [have] yet to suffer an alleged constitutional violation." (Mov. Br. p. 47.) As defendants note, counts three to five relate to the Ordinance and defendants' alleged attempt to take plaintiffs' property without just compensation. (*Id.*) While defendants acknowledge that in takings cases, a plaintiff may pursue a just compensation claim simultaneously with § 1983 claims, defendants note that since there "was no actual affirmative act … to take … the property" here and no damages have been asserted, plaintiffs' § 1983 claims are not ripe for review. (*Id.* pp. 47–50.) To the extent plaintiffs claim they were also deprived of their liberty interest in reputation, defendants argue that because plaintiffs fail to allege that the Motel was damaged economically, plaintiffs fail to sufficiently allege a "Stigma Plus"

6

claim, which result in the constitutional claims not being ripe for review. (*Id.* pp. 49, 50.)

In response, plaintiffs argue that despite "[d]efendants conflat[ing] mootness with ripeness in several instances," defendants' "repeal of the [o]rdinance does not negate" their claims. (Opp'n Br. pp. 37, 38). Plaintiffs note that because "illegal conduct cannot be cured through discontinuance" and they sufficiently alleged "damages, including monetary harm, loss business revenue, and reputational harm," their claims should proceed. (*Id.*)

"It is well settled that the voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice, if the conduct might reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). For example, "the repeal of a challenged ordinance does not necessarily moot a challenge to the constitutionality of that ordinance if the ordinance, or one with similar constitutional infirmities, might be reenacted." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008).

Here, plaintiffs are not challenging the now-repealed ordinance. Rather, plaintiffs argue that by passing the ordinance, defendants "engaged in a course of conduct, custom, practice and policy of retaliation and obstruction" that infringed upon their right to use and enjoy their property. (Compl. ¶103.) Given that there was no taking, the question then becomes whether defendants infringed upon plaintiffs' constitutional rights, such that plaintiffs suffered a particular injury.

While defendants present this as an issue of ripeness, which plaintiffs dispute should be a mootness argument, I find that this argument goes towards

7

plaintiffs' Article III standing. Although the issue of standing was not briefed by the parties, under the Court's "continuing obligation to assure that we have jurisdiction," I am required to raise this issue *sua sponte*. *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 252 (3d Cir. 2017).[3]

"Article III standing requires a plaintiff to demonstrate: '(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)). Beyond the conclusory statement in the Complaint that "[p]laintiffs have suffered and continue to suffer damages from [d]efednants' unlawful conduct," I am having trouble assessing what injury plaintiffs sustained.

To the extent plaintiffs argue that defendants have been attempting to "strong-arm [p]laintiffs into selling the [p]roperty … without just compensation" (Compl. ¶ 130), the issue of just compensation does not arise absent a taking. Furthermore, because the Ordinance has been repealed, any harm plaintiffs may have suffered from defendants' alleged illegitimate objective to pass the Ordinance to take plaintiffs' property does not exist. Counts three to five will thus be dismissed for lack of subject matter jurisdiction. I will nevertheless assess these counts under Rule 12(b)(6) for completeness.

---

[3] At the hearing, I raised concerns about Article III standing and gave the parties the opportunity to argue this issue. (Hearing Tr. pp. 4–9, 12, 13.)

### 2. Failure to State a Claim

#### a. Count Three

In count three, plaintiffs claim their rights under the Equal Protection Clause were violated when defendants passed the now-repealed Ordinance condemning their property, charged Mr. Fernicola without probable cause, and "treated plaintiffs [and their] [p]roperty differently than others similarly situated." (Compl. ¶121.) Plaintiffs invoke the "class of one theory," alleging they were irrationally singled out not because of their membership in a particular group, but rather for reasons unique to them.

To prevail under such a theory, a plaintiff must allege that: (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). I find that the Complaint merely mirrors the elements required to plead a cognizable class of one claim without satisfying the Rule 8(a)(2) standard to allege facts that plausibly support such a claim.

For example, "[p]ersons are 'similarly situated' for equal protection purposes when they are alike 'in all relevant aspects.'" *Joey's Auto Repair & Body Shop v. Fayette Cty.*, 785 Fed. Appx. 46, 49 (3d Cir. 2019) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)). I recognize that plaintiffs are not required to "name names." *See Brick City Grill, Inc. v. City of Newark*, No. 14–04491, 2016 WL 1260019, at *5 (D.N.J. Mar. 30, 2016). However, beyond alleging that "[d]efendants have not acted in this manner towards any other hotel operator," plaintiffs provide no detailed factual allegations that document a pattern of disparate treatment from other "hotel operators." *Cf. Toll Bros. v. Twp. of Moorestown*, No. 10–04843, 2011 WL 2559507, at *7 (D.N.J. June 27, 2011) (finding that the plaintiff satisfied the similarly situated elements of its class of one claim with water users within the

9

defendant's water franchise area by specifically alleging that the defendant had approved other applications for water services); *see Brick City Grill, Inc.*, 2016 WL 1260019, at *5 (finding that the plaintiff "merely stated [a] legal conclusion that other facilities are similarly situated without any additional information). Of note, within the 40-page Complaint, the phrase "hotel operator" is used only once. At no point do plaintiffs articulate facts comparing their treatment with other hotel operators.

Furthermore, the Complaint simply states that "[d]efendants treated [p]laintiffs and the [p]roperty in an arbitrary, capricious, and unreasonable manner intentionally," and that there was "no rational basis to treat [p]laintiffs and the [p]roperty differently." (Compl. ¶¶ 122, 123.) Although the Ordinance was repealed, plaintiffs plead no facts that plausibly support an inference that the defendants acted arbitrarily. Plaintiff only provides conclusory statements and legal conclusions in support of this claim. Accordingly, I will dismiss count three without prejudice.

### b. Count Four

In count four, plaintiffs base their substantive due process claims on defendants' issuance of the press release and passing of the Ordinance. (*Id.* ¶ 128.) Plaintiffs allege that such conduct infringed upon their "right to use and enjoy their property … free from unlawful interference." (*Id.* ¶ 127.)

"[T]o establish that the interest-depriving actions of a governmental entity or official constituted a substantive due process violation, a plaintiff must show both that the particular interest at issue was entitled to constitutional protection and that the government's deprivation of that protected interest occurred in a conscience-shocking manner." *Whittaker v. County of Lawrence*, 674 F. Supp. 2d 668, 699 (W.D. Pa. 2009), *aff'd*, 437 F. App'x 105 (3d Cir. 2011).

As to the Ordinance, the Third Circuit recognizes "an individual's interest in owning real property to be sufficiently "fundamental" to be worthy of

10

substantive due process protection." *Id.* Hence, the next question for consideration is whether defendants' alleged conduct was so "fatally arbitrary" as to be not merely tortious, but unconstitutional. *Whittaker*, 674 F. Supp. 2d at 699, 700. "States of mind such as specific intent, gross negligence and deliberate indifference have been found to be conscience-shocking in various contexts." *Id.* "Most of the decisions in this circuit discussing the various levels of conscience-shocking culpability have involved situations in which the actions or omissions of state officials have resulted in some form of bodily harm or personal injury to an individual." *Id.* Assuming plaintiffs' property was taken or was at the risk of being taken, plaintiffs would arguably suffer a harm in that they would be deprived of a fundamental property interest. *Id.* However this "type of harm is intended (but not necessarily desired) in every eminent domain proceeding." *Id.* Thus, "the Fifth Amendment exacts "just compensation" as the price of a taking." *Id.* "The harm that a property owner suffers in the eminent domain context is purely incidental to an exercise of the State's police power. Such state action does not run afoul of the Due Process Clause simply because the 'harm' suffered by the property owner (*i.e.*, the deprivation of a property interest) is caused intentionally." *Id.* In other words, "legitimate takings do not become substantive due process violations simply because the state officials effectuating such takings act with improper motives." *Id.* "This remains the case even where a state official's improper motive is 'unrelated to the merits of the underlying decision.'" *Id.* (quoting *Chainey, v. Street*, 523 F.3d 200, 219 (3d Cir.2008)).

As to the issuance of the press release, although not articulated as such, plaintiffs appear to allege a due process claim for deprivation of a liberty interest in reputation. To prevail on such a claim, "a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Municipal Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 826 (3d Cir. 2009)

11

(quoting *Dee v. Borough of Dunmore*, 549 F.3d 225, 234–35 (3d Cir. 2008)). "[T]he loss of a business opportunity is insufficient to establish the latter 'plus' requirement." *Id.*; *see Sturm v. Clark*, 835 F.2d 1009, 1012–13 (3d Cir. 1987) (holding that "financial harm resulting from government defamation alone is insufficient to transform a reputation interest into a liberty interest" because "[m]ost if not all, charges of defamation are inevitably accompanied by financial loss"). Here, plaintiffs cannot establish a liberty interest worthy of substantive due process protection. "[D]efamatory statements that curtail a plaintiff's business opportunities [do not] suffice to support a substantive due process claim." *Id.* (quoting *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 400 (3d Cir.2000)). Thus, even if I were to accept that defendants' remarks were defamatory, plaintiffs' substantive due process arguments fail.

Count four will, accordingly, also be dismissed without prejudice.

### c. Count Five

In count five, plaintiffs claim defendants violated their rights under the New Jersey Constitution. (Compl. ¶¶ 136–146.) As asserted in their federal constitutional rights claims, plaintiffs assert that defendants deprived them of their right to "their property and the use and enjoyment of their property." (*Id.* ¶ 139.)

"The New Jersey Constitution does not contain an equal protection clause but the New Jersey courts have found there to be '[a] concept of equal protection ... implicit'" therein. *Palardy v. Township of Millburn*, No. 15–02089, 2016 WL 1732379 (D.N.J. May 2, 2016) (quoting *McKenney v. Byrne*, 412 A.2d 1041, 1047 (N.J. Sup. Ct. 1980)). "Although the right to equal protection in the New Jersey Constitution 'can in some situations be broader than the right conferred by the Equal Protection Clause,'" a class of one analysis applies to equal protection claims under the New Jersey Constitution. *Id.* (quoting *Doe v.*

*Portiz*, 662 A.2d 367, 414 (N.J. Sup. Ct. 1995)); *see Cuozzo v. Cimino*, No. A–5431–10T1, 2012 WL 3116814, at *3 (N.J. Super. Ct. App. Div. July 20, 2012).

I will dismiss this claim for the same reasons that count three will be dismissed. Beyond stating conclusory statements and legal conclusions mirroring the elements required to plead such a claim, plaintiffs provide no factual information to support a claim upon which relief can be granted.

### d. Count Six

In count six, plaintiffs claim that in violation of 42 U.S.C. §1985(3), defendants conspired to deprive plaintiffs of their civil rights. To state a claim for conspiracy to deprive a person of their rights, a plaintiff must allege that the "conspiracy [was] motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Mendez v. New Jersey State Lottery Comm'n*, 532 F. App'x 41, 45 (3d Cir. 2013) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006)).

Plaintiffs do not allege such a motivation and, therefore, fail to allege sufficient facts to support this claim. As discussed above, I find that since no §1983 violations were plausibly alleged, a conspiracy under §1985 cannot exist. Accordingly, count six will be dismissed.

### 3. Immunity Defenses

The Mayor also asserts immunity defenses. "It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott–Harris*, 523 U.S. 44, 46 (1998). The scope of this absolute legislative immunity extends to all actions and omissions taken "'in the sphere of legitimate legislative activity.'" *Id.* at 54. "Assuming the acts complained of are legislative in nature, absolute immunity applies to actions brought against the individual defendants in their individual capacities." *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 834 (D.N.J. 2020). "[H]owever, immunity does not apply unless the acts in

question were both substantively and procedurally legislative." *Id.* at 835. "An act is substantively legislative where it involves 'policy-making of a general purpose' or 'line-drawing.'" *Id.* (quoting *In re Montgomery County*, 215 F.3d 367, 376 (3d Cir. 2000)). "An act is procedurally legislative if it is undertaken 'by means of established legislative procedures.'" *Id.* (quoting *In re Montgomery County*, 215 F.3d at 376.)

"'[A]cts of voting for an ordinance [are], in form, quintessentially legislative,' as [are] all 'integral steps in the legislative process.'" *Id.* (quoting *Brown v. City of Bordentown*, 791 A.2d 1007, 1010 (N.J. Super. Ct. App. Div. 2002); *see Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir. 1983). While a mayor is "generally the executive officer of a municipality," holding such a position may also involve legislative functions. *Aitchison*, 708 F.2d at 99.

Here, the Mayor argues that his tie breaking vote passing the Ordinance was protected by the absolute immunity privilege. Plaintiffs argue that in reasserting his immunity defenses, the Mayor is re-arguing an issue the State Court already determined. (Opp'n Br. pp. 33–37.) Plaintiffs point to the transcript of the oral opinion, dated April 25, 2022, in which the State Court Judge determined:

> As to count two, this is the count that … raises … defamation-based claims … and there's a tension here as to whether or not the [M]ayor, … as a legislative agent, is immunized from what he has to say in that context as opposed to whether or not it was outside the scope of that legislative agency.
>
> … [T]he intent and motive … of the defendants is square an issue … and … there has not been sufficient uncontested facts before the Court that would warrant the dismissal of that. So that's denied, obviously without prejudice.
>
> … [W]hile individual motives may not be relevant in terms of inquiry into the legislators' … intent in adopting an that

> there could be multiple reasons for adoption of an ordinance … and so forth, the question here is whether or not that action was pretextual … and in bad faith and arbitrary, capricious, and unreasonable under the circumstances. So since that … is the subject of further inquiry through the deposition process as well as the discovery process, it's premature to issue that.

(ECF No. 38–1 pp. 8, 9.)

At the time the State Court Judge issued her oral opinion, plaintiffs had not yet raised their §1983 claims. Thus, plaintiffs' argument that this Court cannot reconsider whether the Mayor is protected by immunity under the "law of the case" doctrine fails. (Opp'n Br. p. 34.)

In the alternative, the Mayor asserts qualitative immunity. (Mov. Br. p. 44.) Because I find that absolutely immunity applies, I will not address defendants' alternative argument. Whether the Mayor has immunity as to the defamation claim is a separate question that is to be addressed along with the other state law claims.

### 4. <u>Duplicative Claims</u>

While plaintiffs assert their claims against the Mayor in his individual capacity (*see* Compl.; Opp'n Br. pp. 39–40), defendants argue that the Mayor's challenged actions were performed in his official capacity (Mov Br. pp. 34–38). In other words, defendants argue that counts three to six are duplicative official capacity claims against the Borough and the Mayor. (*Id.*)

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[T]o establish personal liability in a §1983 action, it is enough to show that the official, acting under color of

15

state law, caused the deprivation of a federal right." *Id.* "More is required in an official-capacity action, however, … a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation. *Id.* (quoting *Polk Cnty v. Dodson*, 454 U.S. 312, 326 (1981)). "[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Monell*, 436 U.S. at 694).

Plaintiffs fail to distinguish between the conduct performed by the Borough and the Mayor. The acts of issuing the press release, passing the Ordinance, and charging either John A. Fernicola or John Fernicola with disorderly persons offenses are lumped together as being performed by both defendants. (*See* Compl. ¶¶ 121, 128, 140.) Thus, it appears that plaintiffs are impermissibly bringing duplicative claims against Mayor, in his official capacity rather than individual capacity, and the Borough. *See Snell v. City of York*, 564 F.3d 659, 664 (3d Cir. 2009) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[,]' since '[i]t is not a suit against the official personally, for the real party in interest is the entity'" (alterations in original) (quoting *Kentucky*, 473 U.S. at 165 (1985)). Unless plaintiffs can sufficiently articulate how the claims against the Mayor are being brought in his individual capacity, the claims against the Mayor must be dismissed for being duplicative. *See Baex v. Lancaster Cty.*, 487 F. App'x. 30, 32 (3d Cir. 2012).

### B.     Counts Two, Seven to Nine

The remaining counts are all state law claims. Although I will be dismissing plaintiffs' federal claims without prejudice to allow plaintiffs an opportunity to amend the Complaint, this Court's jurisdiction is at issue. To

avoid providing an advisory opinion as to the state law claims, I will reserve as to those claims.

## V.  CONCLUSION

For the reasons stated above, the Motion is **GRANTED in part**. An order will follow.

                           <u>/s/ Edward S. Kiel</u>
                           EDWARD S. KIEL
                           UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2025